RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0041p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MANN CONSTRUCTION, INC.; BROOK WOOD;
KIMBERLY WOOD; LEE COUGHLIN; DEBBIE COUGHLIN,

*Plaintiffs-Appellants*,

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

┐
│
│
│
> No. 21-1500
│
│
│
┘

───────────────

Appeal from the United States District Court for the Eastern District of Michigan at Bay City.
No. 1:20-cv-11307—Thomas L. Ludington, District Judge.

Argued: December 9, 2021

Decided and Filed: March 3, 2022

Before: SUTTON, Chief Judge; STRANCH and BUSH, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:** Samuel Joseph Lauricia III, WESTON HURD LLP, Cleveland, Ohio, for Appellants. Ellen Page DelSole, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Samuel Joseph Lauricia III, Walter A. Lucas, Matthew C. Miller, Randy L. Taylor, WESTON HURD LLP, Cleveland, Ohio, for Appellants. Ellen Page DelSole, Francesca Ugolini, Geoffrey J. Klimas, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

**OPINION**

---

SUTTON, Chief Judge.   Several taxpayers complain about the Internal Revenue Service's enforcement of an administrative regulation that requires them to report transactions involving cash-value life insurance policies connected to employee-benefit plans.  The taxpayers claim that the IRS failed to meet a reporting requirement of its own by skipping the notice-and-comment process before promulgating this legislative rule.   If individuals "must turn square corners when they deal with the government," the taxpayers insist, "it cannot be too much to expect the government to turn square corners when it deals with them." *Niz-Chavez v. Garland*, 141 S. Ct. 1474, 1486 (2021).   We agree with the taxpayers and reverse the district court's contrary decision.

I.

In collecting federal taxes, the Internal Revenue Service uses a "system of self-reporting." *United States v. Bisceglia*, 420 U.S. 141, 145 (1975).  Much as there may not be "a patriotic duty to increase one's taxes" under that system, *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir. 1934), there is a duty to report all of the financial information that Congress requires.

Congress delegated power to the Secretary of the Treasury, who, through the IRS, requires taxpayers to submit information needed to assess and collect taxes.  *See* 26 U.S.C. § 6011; *see also id.* § 7701(a)(11)(B).   This information-gathering imperative allows the government to ensure compliance with tax provisions and ferret out improper tax avoidance.

In 2004, Congress added 26 U.S.C. § 6707A to the IRS's arsenal of tools for identifying tax avoidance schemes.  Designed to shed light on potentially illegal tax shelters, § 6707A permits the IRS to penalize the failure to provide information concerning "reportable" and "listed" transactions.

A "reportable transaction" is one that has the "potential for [illegal] tax avoidance or evasion." *Id.* § 6707A(c)(1).  A "listed transaction" is one that "is the same as, or substantially

similar to, a transaction" that the IRS has identified as a "tax avoidance transaction." *Id.* § 6707A(c)(2). The statute authorizes monetary penalties and criminal sanctions for noncompliance with these reporting requirements. *Id.* §§ 6707A(b), 7203.

Today's dispute centers on a listed transaction. In 2007, the IRS issued Notice 2007-83, entitled "Abusive Trust Arrangements Utilizing Cash Value Life Insurance Policies Purportedly to Provide Welfare Benefits." 2007-2 C.B. 960. The Notice designates certain employee-benefit plans featuring cash-value life insurance policies as listed transactions. A cash-value life insurance policy combines life insurance coverage with a cash-value investment account. As the IRS saw it, these transactions run the risk of allowing small business owners to receive cash and other property from the business "on a tax-favored basis." *Id.*

Brook Wood and Lee Coughlin collectively own Mann Construction, which is based in Michigan. The company provides general contracting, construction management, and similar services.

From 2013 to 2017, Mann Construction established an employee-benefit trust that paid the premiums on a cash-value life insurance policy benefitting Wood and Coughlin. The company deducted these expenses, while Wood and Coughlin reported as income part of the insurance policy's value. Neither the individuals nor the company reported this arrangement to the IRS as a listed transaction.

In 2019, the IRS concluded that this structure fit the description identified in Notice 2007-83. The agency imposed penalties on the company ($10,000) and both of its shareholders ($8,642 and $7,794) for failing to disclose their participation in the trust. All three paid the penalties for the 2013 tax year and sought administrative refunds, claiming the IRS lacked authority to penalize them. When the administrative process for challenging the penalties left the taxpayers empty-handed, they turned to federal court.

There, in 2020, the taxpayers sued the federal government to recover the penalties. *See* 28 U.S.C. § 1346(a)(1); 26 U.S.C. § 7422(a). They challenged the validity of the Notice and penalties on four grounds: (1) the Notice failed to comply with the notice-and-comment requirements of the Administrative Procedure Act; (2) it constituted unauthorized agency action;

(3) it was arbitrary and capricious; and (4) even if the Notice was valid, the arrangement at issue did not fall within its scope.

The district court ruled for the government on all fronts.

## II.

We begin, and end, with the notice-and-comment claim. Before an agency may promulgate a regulation that has the force of law—in this instance requiring taxpayers to report a transaction or face hefty financial penalties and criminal sanctions—the Administrative Procedure Act, 5 U.S.C. §§ 551, 553–59, 701–06, usually requires it to run through a light-shedding process of its own. Under normal circumstances, the agency must publish a notice about the proposed rule, allow the public to comment on the rule, and, after considering the comments, make appropriate changes and include in the final rule a "concise general statement of" its contents. *Id.* § 553; *see Perez v. Mortg. Bankers Ass'n*, 575 U.S. 92, 96 (2015). The process serves regulated parties and the agency alike. "Notice and comment gives affected parties fair warning of potential changes in the law and an opportunity to be heard on those changes—and it affords the agency a chance to avoid errors and make a more informed decision." *Azar v. Allina Health Servs.*, 139 S. Ct. 1804, 1816 (2019). The process also shines a light on delegations of authority from Congress to an executive-branch agency to ensure they remain subject to public scrutiny. Courts must "set aside" agency actions that fail to follow these requirements. 5 U.S.C. § 706(2)(D); *see Tenn. Hosp. Ass'n v. Azar*, 908 F.3d 1029, 1042 (6th Cir. 2018).

The IRS, all agree, did not follow these notice-and-comment procedures when it issued Notice 2007-83. But that reality does not end the case. The IRS offers two explanations for declining to follow the notice-and-comment process: (1) It says that Notice 2007-83 is merely an interpretive rule (which does not require notice and comment) as opposed to a legislative rule (which does require notice and comment); and (2) it says that, even if the Notice amounts to a legislative rule, Congress exempted the IRS from the APA's requirements with respect to these disclosure rules. Each defense deserves a turn.

*Was this Notice a legislative rule?* Yes. In explaining why, some background is in order. The APA distinguishes between "legislative rules" and "interpretive rules." Only the former are subject to the Act's notice-and-comment requirements. By statute, Congress has exempted interpretive rules from notice and comment. 5 U.S.C. § 553(b)(3)(A). Binding "substantive agency regulations" by contrast must satisfy the required procedures. *Chrysler Corp. v. Brown*, 441 U.S. 281, 295, 313–315 (1979). Some guideposts offer some clues in distinguishing the two types of rules.

Legislative rules have the "force and effect of law"; interpretive rules do not. *Perez*, 575 U.S. at 96–97 (quoting *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995)). Legislative rules impose new rights or duties and change the legal status of regulated parties; interpretive rules articulate what an agency thinks a statute means or remind parties of pre-existing duties. *Tenn. Hosp. Ass'n*, 908 F.3d at 1042. When rulemaking carries out an express delegation of authority from Congress to an agency, it usually leads to legislative rules; interpretive rules merely clarify the requirements that Congress has already put in place. *Id.* at 1043.

Measured by these metes and bounds, Notice 2007-83 amounts to a legislative rule. The Notice has the force and effect of law. It defines a set of transactions that taxpayers must report, and that duty did not arise from a statute or a notice-and-comment rule. It springs from the IRS's own Notice. Taxpayers like Mann Construction had no obligation to provide information regarding listed transactions like this one to the IRS before the Notice. They have such a duty after the Notice. Obeying these new duties can "involve significant time and expense," and failure to comply comes with the risk of penalties and criminal sanctions, all characteristics of legislative rules. *CIC Servs., LLC v. IRS*, 141 S. Ct. 1582, 1591 (2021); *see also id.* at 1592; Kristin E. Hickman, *Unpacking the Force of Law*, 66 Vand. L. Rev. 465, 524 (2013) (characterizing penalties as a leading indicator that a regulation is legislative rather than interpretive).

The Notice also stems from an express and binding delegation of rulemaking power. Congress tasked the IRS with determining "by regulations" how taxpayers must "make a return or statement" and the information they must provide to the IRS when doing so. 26 U.S.C. § 6011(a). Under the penalty provision for failing to report certain types of transactions, the

statute delegates to the Secretary of the Treasury authority to "determine[]" which transactions have "a potential for tax avoidance or evasion" or are "the same as, or substantially similar to, a transaction" deemed "a tax avoidance transaction." *Id.* § 6707A(c)(1)–(2). The long and the short of it is that Congress "delegates to the Secretary of the Treasury, acting through the IRS, the task of identifying particular transactions with the requisite risk of tax abuse." *CIC Servs.*, 141 S. Ct. at 1587. In identifying a new type of transaction purportedly satisfying these demands, Notice 2007-83 purports to carry out this congressional delegation. In every relevant way, the Notice has the stripes and colors of a legislative rule subject to the notice-and-comment process.

Attempting to fend off this conclusion, the government argues that Notice 2007-83 merely interprets the term "tax avoidance transaction" in § 6707A. But, as shown, the substance of the Notice is legislative. It creates new substantive duties, the violations of which prompt exposure to financial penalties and criminal sanctions. Those are hallmarks of a legislative, not an interpretive, rule. The government's argument also overlooks the reality that the relevant statutory terms are not self-defining, which explains why Congress delegated to the IRS authority to "determine[]" and "identif[y]" which transactions need to be reported. 26 U.S.C. § 6707A(c)(1)–(2); *see CIC Servs.*, 141 S. Ct. at 1587. That feature of the Notice, once again, represents a quality of a quintessential legislative rule. *Hoctor v. U.S. Dep't of Agric.*, 82 F.3d 165, 169–70 (7th Cir. 1996) (deeming a binding rule promulgated pursuant to a delegation of legislative authority "the clearest possible example of a legislative rule").

Earlier language in Notice 2007-83, the government adds, shows the IRS's intention to challenge claimed tax benefits arising from transactions like this one, confirming that the "primary purpose" of the Notice was to inform taxpayers of its plans, not to impose new obligations. Appellee's Br. at 67–68. That may indeed have been a central purpose of the Notice. But this purpose does not alter the reality that the portion of the regulation at issue—the determination that a certain transaction is one taxpayers must report on pain of penalty—retains the essential qualities of a legislative rule subject to notice-and-comment procedures. *See Cmty. Nutrition Inst. v. Young*, 818 F.2d 943, 946–47 (D.C. Cir. 1987) (per curiam) (characterizing an agency pronouncement as a legislative rule, rather than a policy statement, because language

used in the document gave it present binding effect).  All perspectives considered, the Notice is a legislative rule.

*Did Congress expressly exempt the IRS from the APA's requirements?*  No.  In explaining why, some background again is in order.  The baseline assumption for agency action that will have the force and effect of law is that it must go through notice and comment.  5 U.S.C. § 553. But Congress may exempt an agency from the process.  It has done so before.  *See, e.g.*, *Marcello v. Bonds*, 349 U.S. 302, 310 (1955) (immigration).

Did it do so here?  Before an agency may regulate without the protections of the notice-and-comment process, it must show that Congress "expressly" carved out the exception. 5 U.S.C. § 559.  "Exemptions from the terms of the Administrative Procedure Act are not lightly to be presumed."  *Marcello*, 349 U.S. at 310; *see also Dickinson v. Zurko*, 527 U.S. 150, 155 (1999) (recognizing consistent processes as a goal of the APA and requiring a clear indication in the relevant statute to deviate from that norm).

That is not to say that Congress must "employ magical passwords in order to effectuate an exemption from the Administrative Procedure Act."   *Marcello*, 349 U.S. at 310. Modifications of the APA in a given area may take more than one form.  Indeed, Congress may "exempt the current statute from the earlier statute" and can "express any such intention either expressly or by implication as it chooses."  *Dorsey v. United States*, 567 U.S. 260, 274 (2012). What is needed is an "express[]" indication of congressional intent.  *Marcello*, 349 U.S. at 310. That leaves courts with the task of determining whether the statute at hand indicates that Congress intended to abrogate the APA's notice-and-comment requirements in a "clear" or "plain" way in a later statute.  *Cf. Lockhart v. United States*, 546 U.S. 142, 145–46 (2005); *see also Dorsey*, 567 U.S. at 274 ("[S]tatutes enacted by one Congress cannot bind a later Congress.").

As the concrete tends to inform the abstract, let us offer some examples.  Start with cases in which the court accepted an express congressional deviation from the conventional notice-and-comment requirements.  In one case, the U.S. Supreme Court accepted Congress's clear rejection of the APA's baseline approach based on Congress's "laborious adaptation of the"

APA to deportation proceedings and the "specific points at which deviations" were made from APA procedures. *Marcello*, 349 U.S. at 310 (Immigration and Nationality Act of 1952). In another case, our court highlighted an example of how Congress could unequivocally modify the APA's procedures with statutory text: "Except as otherwise provided in this chapter, the provisions of sections 551 to 559 and sections 701 to 706 of [the APA] shall not apply to the making of any order, notice, or decision made pursuant to this chapter, or to any proceeding for the review thereof." *Reich v. Youghiogheny & Ohio Coal Co.*, 66 F.3d 111, 114 n.2 (6th Cir. 1995) (quoting 30 U.S.C. § 956). In still another case, the D.C. Circuit identified a clear rejection of the APA's baseline approach based on Congress's creation of "specific procedures" that "differ from those of the APA." *Asiana Airlines v. F.A.A.*, 134 F.3d 393, 398 (D.C. Cir. 1998) (Federal Aviation Reauthorization Act).

Contrast these cases to those that failed to meet the clarity imperative. In one case, "minor variations" from the APA in which the "variations deal[t] primarily with subjects not contained in the APA" did not suffice to modify the presumption of the APA's applicability. *Lane v. U.S. Dep't of Agric.*, 120 F.3d 106, 109–10 (8th Cir. 1997) (National Appeals Division statutes). In another case, a statutory scheme that remained "compatible with the APA"—but with extensive and exclusive procedural components—did not satisfy the stiff requirements for displacing the APA. *Citizens for Resp. & Ethics in Wash. v. F.E.C.*, 993 F.3d 880, 890–92 (D.C. Cir. 2021) (Federal Election Campaign Act). In another case, the court held that statutory procedures requiring "public notice" and "public hearings" did not abrogate the APA's notice-and-comment requirements. *Lake Carriers' Ass'n v. E.P.A.*, 652 F.3d 1, 6 (D.C. Cir. 2011) (per curiam) (Clean Water Act). Whether faced with statutes potentially on one side of the line or the other, we remain vigilant that "the import of the § 559 instruction is that Congress's intent to make a substantive change be clear." *Ass'n of Data Processing Serv. Orgs. v. Bd. of Governors of Fed. Rsrv. Sys.*, 745 F.2d 677, 686 (D.C. Cir. 1984).

This case falls on the failure-to-be-express side of the line. Two relevant provisions exist, one with respect to reportable transactions, the other with respect to listed transactions. "The term 'reportable transaction,'" one says, "means any transaction with respect to which information is required to be included with a return or statement because, as determined under

regulations prescribed under section 6011, such transaction is of a type which the Secretary determines as having a potential for tax avoidance or evasion." 26 U.S.C. § 6707A(c)(1). "The term 'listed transaction,'" the other says, "means a reportable transaction which is the same as, or substantially similar to, a transaction specifically identified by the Secretary as a tax avoidance transaction for purposes of section 6011." *Id.* § 6707A(c)(2). On top of that, Congress more generally tasked the IRS with determining "by regulations" how taxpayers must "make a return or statement" and the information they must provide to the IRS when doing so. *Id.* § 6011.

Note to begin the absence of any express variation of the APA's notice-and-comment procedures. The statutes do not say anything, expressly or otherwise, that modifies the baseline procedure for rulemaking established by the APA. *Id.* §§ 6011, 6707A. Nor did Congress expressly displace those requirements by creating a new procedure for these regulations. The statutes do not provide *any* "express direction to the" agency "regarding its procedure" for identifying reportable and listed transactions, let alone procedures "that cannot be reconciled with" notice-and-comment requirements or any other indication within the statutory text that "plainly expresses a congressional intent to depart from" the normal APA procedures. *Asiana Airlines*, 134 F.3d at 398. The statutes merely establish a disclosure and penalty regime for the IRS to administer. As to the statutory text, Congress did not change the background procedural requirements of the APA or otherwise indicate an exemption from those requirements in a "clear" or "plain" way that would make the APA's procedures inapplicable to the IRS. *See Lockhart*, 546 U.S. at 145–46.

Not true, the government pushes back. It starts by pointing to the cross-reference language in the reportable transaction definition, which describes such transactions as those "determined under regulations prescribed under section 6011." 26 U.S.C. § 6707A(c)(1). It then adds that, at the time Congress enacted § 6707A, one such regulation provided that the IRS could identify reportable and listed transactions by "notice, regulation, or other form of published guidance." 26 C.F.R. § 1.6011-4(b)(1)–(2) (2003). Because a "notice" is the type of IRS action at issue, it claims that the statute contains an express exception from the APA's notice-and-comment process.

But the agency's reference to its apparent rules of process, without more, does not show that *Congress* exempted Notice 2007-83 from notice-and-comment rulemaking. The question is whether Congress amended the APA's prerequisites, not whether the IRS did. While the cross-reference is probative of whether Congress was aware of the IRS's transaction-listing procedures, it does not alone suffice to show an express exemption from the APA procedures. Even on its own terms, moreover, the argument falls short. Section 6707A deals with penalties for not reporting certain transactions to the IRS. The statute's key feature is to describe the "type[s]" of "transaction[s]" subject to penalties for non-reporting, namely the ones "determined" by "the Secretary" "because" they have a "potential for tax avoidance or evasion." 26 U.S.C. § 6707A(c)(1). The statute thus addresses a "which transactions" question, not a "what process" question. That does not suffice to create an express modification of the APA's background assumption that rulemaking will go through the notice-and-comment requirements.

Statutory context reinforces the point. The cross-reference featured in § 6707A appears in the "definitions" portion of the statute and appears there only to show reportable transactions, not listed transactions. *Compare id.*, *with id.* § 6707A(c)(2). The "regulations prescribed under section 6011," *id.* § 6707A(c)(1), contain *all* information that taxpayers must report, *see id.* § 6011. One way or another, Congress had to cross-reference those regulations—to incorporate the list of covered transactions—undermining the idea that the cross-reference somehow expressly changes the procedure for issuing legislative rules.

The driving inquiry is whether Congress "clearly" departed from the APA's baseline rule. *Lockhart*, 546 U.S. at 145; *see also Ass'n of Data Processing*, 745 F.2d at 685–86. Potential inferences layered on top of conjectural implications do not suffice. The government, notably, has not identified any case in which Congress exempted an agency from the APA's requirements via such a winding and elaborate route. Accepting the government's approach "would require us to create § 559 precedent that itself could prove disruptive by too readily permitting other agencies to depart from uniform APA requirements." *Dickinson*, 527 U.S. at 162.

The government separately argues that Congress ratified by inaction the IRS's nonconformance with the APA. Congress, it is true, sometimes may be deemed to "ratify acts which it might have authorized and give the force of law to official action unauthorized when

taken." *Swayne & Hoyt v. United States*, 300 U.S. 297, 301–02 (1937). But this argument faces a lot of yellow lights. Inaction may, but does not always, mean ratification. And it rarely suffices to show express modification of the APA's bedrock procedural guarantees given the raft of potential explanations for inaction on Capitol Hill. The government identifies nothing beyond Congress's "mere acquiescence" to the IRS's non-conforming practices over the years, which does not suffice. *Hannah v. Larche*, 363 U.S. 420, 438–39 (1960).

Implied ratification also would be odd in this context. It may be the case in some settings that Congress is "presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *cf. Boeing Co. v. United States*, 537 U.S. 437, 457 (2003). But Congress presumably is equally aware of the APA's requirement that it must "expressly" override the normal notice-and-comment rules. 5 U.S.C. § 559. It takes far more than the clanging silence we have here to infer that Congress has expressly altered the prerequisites for creating a rule that imposes financial and criminal penalties.

Last of all, the government invokes legislative history. It notes that tax shelters have been a rampant problem that the IRS needs to address promptly, all without the procedural burdens that the APA imposes, and the legislative history shows as much. A representative of the IRS testifying in Congress, for example, noted that prior to § 6707A's enactment "the best tool we have in dealing with [abusive transactions] is early identification." *Hearing Before S. Comm. on Fin.*, 107th Cong. 8 (2002). The IRS, he added, had to be able to "[i]dentify[] questionable transactions early . . . and issue guidance, in some cases before the transactions even show up on tax returns." *Id.* But the U.S. Supreme Court has already rejected the idea that tax law deserves special treatment under the APA. In its words, "we are not inclined to carve out an approach to administrative review good for tax law only." *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 55 (2011).

Also problematic is that legislative history standing alone cannot supply the "express," "plain," or "clear" direction needed to show that Congress modified the APA's procedures in this area. "Legislative history, for those who take it into account, is meant to clear up ambiguity, not create it." *Milner v. Dep't of Navy*, 562 U.S. 562, 574 (2011). A congressional ambiguity does

not a clear statement make.  In the last analysis, if the IRS "doesn't like Congress's notice-and-comment policy choices, it must take its complaints there."  *Azar*, 139 S. Ct. at 1815.  Any exceptions to the sturdy protections established by the APA's notice-and-comment requirements must come from Congress, not us and not the IRS.

***

Because the IRS's process for issuing Notice 2007-83 did not satisfy the notice-and-comment procedures for promulgating legislative rules under the APA, we must set it aside.  In the absence of this Notice, we need not address the taxpayers' remaining claims.

We reverse.